**Margot NEWMARK, Plaintiff,**

v.

**RKO GENERAL, INC. and Frontier Airlines, Inc., Defendants.**

**No. 67 Civ. 4914.**

United States District Court, · S. D. New York.

July 28, 1971.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff; Stanley L. Kaufman, Allan K. Peckel, New York City, of counsel.

Regan, Goldfarb, Powell & Quinn, New York City, for defendant RKO General, Inc.; John J. Galgay, Peter G. Corbett, New York City, of counsel.

Lovejoy, Wasson, Lundgren & Ashton, New York City, for Frontier Airlines, Inc.; Walter C. Lundgren, William F. Downey, Edwin E. McAmis, Martin R. Lee, New York City, of counsel.

## OPINION

BONSAL, District Judge.

Plaintiff, Margot Newmark, a security holder in Frontier Airlines, Inc. ("Frontier"), instituted this action on behalf of Frontier under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) to recover short swing profits allegedly made by defendant RKO General, Inc. ("RKO") at the time of the merger of Central Airlines, Inc. into Frontier. Plaintiff recovered a judgment on behalf of Frontier of $7,920,681.58, which, together with post-judgment interests of $553,362.75, has been paid in full.

In this proceeding, plaintiff's attorneys, Kaufman, Taylor, Kimmel & Miller ("Kaufman"), are applying for attorneys' fees and disbursements in the amounts of $2,500,000. and $16,000. respectively.

Plaintiff's action was instituted in December of 1967, and on December 6, 1968 Judge Tyler granted summary judgment to plaintiff on the issue of liability (294 F.Supp. 358 (S.D.N.Y. 1968)). The issue of the amount of defendant RKO's short-swing profits was tried without a jury on June 3 and June 10, 1969. On September 22, 1969 this court held that the amount of RKO's short-swing profits was $7,920,681.58 (305 F.Supp. 310 (S.D.N.Y.1969)). Judgment was entered in this amount and execution of the judgment was stayed pending appeal. The Court of Appeals affirmed on April 30, 1970 (425 F.2d 348 (2d Cir. 1970)), and on June 2, 1970 denied RKO's petition for a rehearing or, alternatively, for a rehearing en banc. The Supreme Court denied certiorari on October 12, 1970 (400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91), and on November 16, 1970 denied RKO's petition for a rehearing (400 U.S. 920, 91 S.Ct. 172, 27 L.Ed.2d 761). On November 25, 1970, this court denied RKO's motion to stay execution of the judgment, and the amount thereof, including post-judgment interest, was paid to Frontier.

On February 23, 1971, Kaufman filed this application for attorneys' fees, and three hearings thereon were held between April 6 and June 1, 1971. During the course of the hearings, Frontier notified its stockholders of the Kaufman fee application, took the deposition of Stanley Kaufman, Kaufman's senior partner, and employed Price Waterhouse & Co. to examine Kaufman's time records.

█ Frontier and RKO have contended that Kaufman's application is premature in view of pending proceedings before the Civil Aeronautics Board which may result in a reduction of Frontier's subsidy, which it is said would reduce the value of Frontier's recovery. However, Kaufman earned its fee when it completed this litigation and is entitled to a reasonable fee, regardless of any future reduction of Frontier's subsidy. See Missouri Pacific R.R. Co. v. Austin, 292 F.2d 415 (5th Cir. 1961); Martin v. United Standard Oilfund of America, 30 F.Supp. 864 (S.D.N.Y.1939).

█ Frontier and RKO also suggest that since RKO owns 56% of Frontier, the benefit of the judgment to Frontier's public stockholders is limited to 44% thereof, and that the Kaufman attorneys' fee should be based on the recovery attributable to Frontier's public stockholders. However, the court holds that Kaufman's fee should be based on Frontier's recovery, exclusive of post-judgment interest. Schleiff v. Chesapeake & Ohio Ry., 64 Civ. 3478 (S.D.N.Y. March 12, 1968) (Wyatt, J.); Angoff v. Goldfine, 270 F.2d 185 (1st Cir. 1959).

Kaufman contends that the amount sought of $2,500,000. in legal fees and $16,000. in disbursements is fair and reasonable in view of the successful outcome of this litigation. Frontier contends that a generous fee should not exceed $575,000., and RKO contends that the fee should not exceed $300,000. Some of the letters from Frontier stockholders which were filed in this proceeding suggest a fee of 10% of the amount recovered.

The court invited the Securities and Exchange Commission to file a brief *amicus curiae* on the amount of the fee. On April 6, 1971 the Commission filed a memorandum in which it stated, " * * * the Commission believes that an allowance of $2,500,000 in counsel fees, as requested by plaintiff's attorneys, would be excessive." After reviewing the factors involved, the Commission concluded:

"Under all the circumstances, the Commission believes a fee allowance of $1,000,000 is appropriate to provide the 'stimulus for the enforcement of § 16(b)' contemplated by Smolowe v. Delendo Corp., 136 F.2d 231, 241 (C. A. 2), certiorari denied, 320 U.S. 751 [64 S.Ct. 56, 88 L.Ed. 446] (1943)."

Kaufman relies on various cases where a percentage of the recovery has been awarded, and suggests that the percentage should be in the range of 30%. See Epstein v. Weiss, 50 F.R.D. 387 (E.D.La.1970). It is true that there have been a number of Section 16(b) cases in this court in which the plaintiff's attorneys have been awarded fees ranging from 20% to 50% of the amount recovered, where the amounts recovered ranged from $70,000. to $190,-000. (See Appendix B, Kaufman Application). However, as pointed out by the Securities and Exchange Commission in its memorandum *amicus*,

"* * * there comes a point where, as in the present case, the judgment is so large that a fee based primarily on a percentage of recovery exceeds the limits of reasonable compensation for the attorneys' efforts."

See also Winkelman v. General Motors Corp., 48 F.Supp. 504 (S.D.N.Y.1942), aff'd sub nom., Singer v. General Motors Corp., 136 F.2d 905 (2d Cir. 1943).

█ In determining a reasonable fee for Kaufman, the court has considered the following factors: 1) the amount of

the recovery; 2) the novelty and complexity of the legal issues; 3) the skill with which the services were performed, and the standing of Kaufman; 4) the benefits to Frontier; 5) the contingent nature of Kaufman's employment; 6) the hours reasonably expended by Kaufman. See Derdiarian v. Futterman Corp., 254 F.Supp. 617 (S.D.N.Y.1966); Fox v. Glickman Corp., 253 F.Supp. 1005 (S.D.N.Y.1966); Winkelman v. General Motors Corp., *supra*; Angoff v. Goldfine, *supra*.

Plaintiff obtained the maximum recovery on behalf of Frontier. As Judge Ryan noted in *Derdiarian, supra* 254 F. Supp. at 620, "the amount of recovery rather than the time spent is the prime factor in fixing [the] fee." See also Blau v. Brown, CCH Fed.Sec.L.Rep., 67–69 decs., ¶ 92,263 (S.D.N.Y.1968).

The issues here presented under 16(b) were novel, and in some respects this litigation has created new law in defining insider 16(b) liability in the area of mergers. Hemmer, Insider Liability For Short-Swing Profits Pursuant to Mergers and Related Transactions, 22 Vand.L.Rev. 1101 (1969); Comment, Stock Exchanges Pursuant to Corporate Consolidation: A Section 16(b) "Purchase or Sale"?, 117 U.Pa.L.Rev. 1034 (1969); 84 Harv.L.Rev. 1012 (1971). On the other hand, the proceedings themselves were quite simple. Liability was established on a motion for summary judgment without the necessity of a trial. The trial to determine the amount of the recovery by Frontier from RKO occupied only two days. However, Kaufman showed resourcefulness and skill in presenting the plaintiff's case, and Kaufman has standing in the field of Section 16(b) actions.

Frontier would not have received this recovery had it not been for Kaufman's efforts. In obtaining this recovery, Kaufman was not aided by Frontier and

was vigorously opposed by RKO. Moreover, the recovery was a windfall to Frontier in the sense that Frontier had suffered no harm for which it was being recompensed, Blau v. Rayette-Faberge, Inc., 389 F.2d 469, 474 (2d Cir. 1968).

Kaufman's fees were contingent on recovery. It would have received no compensation had defendant RKO prevailed. In support of its claim for attorneys' fees, Kaufman states that it expended some 5,000 hours in representing the plaintiff in this court, the Court of Appeals, and the Supreme Court. However, an examination of its records indicates that upwards of 500 of these hours were expended in this application for attorneys' fees. Another 500 hours were expended by an outside attorney under a contingent fee arrangement with Kaufman. Price Waterhouse & Co. has certified that Kaufman's records show that between 1966 and March 8, 1971 the members of Kaufman devoted more than 4,200 hours to plaintiff's action, but contains no breakdown to indicate how many hours were expended in the fee application. In any event, it appears that Kaufman expended in the range of 4,000 hours in presenting the action.

Finally, as pointed out in Smolowe v. Delendo Corp., 136 F.2d 231, 241 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943), "Since in many cases such as this the possibility of recovering attorney's fees will provide the sole stimulus for the enforcement of § 16(b), the allowance must not be too niggardly."

■ Taking the foregoing factors into consideration, Kaufman will be awarded the sum of $750,000 which the court considers to be a reasonable attorneys' fee, inclusive of Kaufman's disbursements, which amount shall be paid by Frontier.

Settle order on notice.